IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SUMMERFIELD LAND COMPANY, : 
*et al.*,
  :
    Plaintiffs,    Case No. 3:08cv00301
  :
 vs.    Magistrate Judge Sharon L. Ovington
  : (by full consent of the parties)
CITY OF TROY, OHIO,
  :
    Defendant.
  :

# DECISION AND ENTRY

## I.    INTRODUCTION

Plaintiffs Summerfield Land Company, Tippecanoe Land Company, Inc., and Concord Properties Group, LLC are current and former owners of a certain parcel of land (57.224 acres) known as Inlot 9304 in Troy, Ohio. Plaintiffs bring this case under 42 U.S.C. §1983 claiming that Defendant City of Troy, Ohio (the City) has violated their rights under the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the City has arbitrarily and unreasonably refused to re-zone Inlot 9304 to permit the building of single-family residences, thereby so restricting Plaintiffs' ability to use the land that it constitutes an unconstitutional taking of Inlot 9304 without just compensation. *See* Doc. #1 at 7-9.

The case is presently before the Court upon Defendant City of Troy's (the City's) Motion to Dismiss (Doc. #6), Plaintiffs' Memorandum in Opposition to Motion to Dismiss (Doc. #8), the City's Reply Memorandum (Doc. #9), and the record as a whole. The Court previously held a hearing, during which the parties' counsel presented oral

arguments.

**II.    BACKGROUND**

    **A.    Plaintiffs' Complaint**

The central point of the Complaint is that Inlot 9304 was, and remains, zoned for agricultural use; Plaintiffs want the City to re-zone it for single-family residential use.

The Complaint explains, "The City has determined that Inlot 9304 shall be deemed to be informally zoned as 'City Administered County Agricultural.'[1]  This determination effectively means that the parcel will maintain its Miami County zoning designation and also be subject to the agricultural use restrictions related to property pursuant to the City's Zoning Ordinances."  (Doc. #1 at ¶10)(footnoted added).

Plaintiffs state that the City's informal zoning designation – "City Administered County Agricultural" – is not set forth in the City's zoning ordinances, and that the City has not yet provided a zoning designation under the City's zoning ordinances.  (Doc. #1, ¶s 11-12).  Plaintiffs claim that certain provisions of the City's zoning ordinances require the City to designate Inlot 9304 as located within the "'R-3' Single-Family Resident District."  (Doc. #1, ¶s 13-15).

Plaintiffs also describe a series of events – adoption of rezoning ordinances later rejected by legislative and/or popular votes – leaving Inlot 9304 with its informal zoning designation as agricultural rather than residential.  (Doc. #1 at ¶s 16-23).  One decision, in 2003, to re-zone Inlot 9304 as "R-4 single family" would have been consistent with City's Comprehensive Plan in place at that time, which favored, or at least allowed, residential development of property.  Plaintiffs note that the City's Comprehensive Plan does not contain a zoning designation called "City Administered County Zoning."  (Doc. #1, ¶32).

---

[1]  The Complaint also describes this zoning designation as "City Administered County Zoning." (Doc. #1, ¶32).  Regardless of the correct nomenclature, the Complaint's main point is that the property was and is zoned for agricultural use, and Plaintiffs' want it re-zoned for single-family residential use.

Plaintiffs assert that they "have exhausted all reasonable and available administrative remedies to develop the subject property in a reasonable and proper manner....  Any other remedies would be unduly burdensome on the Plaintiffs/Relators, futile, or unreasonable."  (Doc. #1 at ¶s 33-34).

Plaintiffs' Complaint contains five claims for relief.  Their first claim – captioned "Declaratory Judgment" – seeks a judgment under 28 U.S.C. §2201 declaring in part:

> ... (4) the City may not deem Inlot 9304 to be zoned "City Administrative County Agricultural" under the City Zoning Ordinances or Ohio law; ... (6) parcels of real property annexed into the City after January 1, 2000 and are not identified on the City's zoning map are zoned "'R-3' Single-Family Residence District"; and/or (7) the City's designation of Inlot 9304 as zoned "City Administered County Agricultural" is unconstitutional.

(Doc. #1 at ¶42).

Plaintiffs' second claim – captioned "Mandamus" – seeks a writ of mandamus under "Ohio Revised Code §§2731.01 through 2731.16 ordering the public authorities to institution appropriate proceedings on Inlot 9304."  (Doc. #1 at ¶56).  Plaintiffs claim, "An involuntary taking of private property has occurred regarding Inlot 9304 under the zoning ordinances for the City of Troy and there is otherwise no adequate remedy for Plaintiffs/Relators in the ordinary course of law."  (Doc. #1 at ¶58).

Plaintiffs' third claim – captioned "Unconstitutional Taking of Property Without Just Compensation in Violation of the Ohio and United States Constitutions and 42 U.S.C. §1983" – states, "The City's action including those of the public and the various referendum actions are arbitrary, unreasonable, and without substantial relation to the public health, safety, morals, or general welfare.  Art. I, §19 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution require the payment of just compensation for the taking of property rights."  (Doc. #1 at ¶73).  Plaintiffs similarly claim that the City "has taken, and is presently taking, and will continue to take Plaintiffs' property rights without due process of law and without the

3

payment of just compensation." (Doc. #1 at ¶74).

Plaintiffs assert in their fourth claim that the City has violated their substantive and procedural due process rights guaranteed by the Constitution. Plaintiffs' fifth claim asserts that the City has violated their right to equal protections of the law.

### B.     Summerfield's Prior State Case

In 2006, before bringing the present case, Plaintiff Summerfield filed a Complaint in the Miami County, Ohio Court of Common Pleas. In that prior case, Summerfield raised the same Takings claim that Plaintiffs raise in the present case. In addition to the Takings claim, Summerfield sought declaratory judgment and mandamus relief in the prior case, requiring the City to designate Inlot 9304 as within the "'R-3' Single Family Residence District" under the City's zoning ordinances. *See* Doc. #8, Exhibits 1, 3.

Following a bifurcation of the declaratory judgment action from the mandamus and Takings claims, the Court of Common Pleas ruled on the declaratory judgment request by concluding that Inlot 9304 "continues to carry the zoning classification it had before annexation (O.R.C. 303.18)." (Doc. #8, Exh. 6 at 7). Since this left Inlot 9304 as zoned for agricultural use, the decision rejected Summerfield's declaratory judgment claim. *Id*. at 7-8. The Court of Common Pleas did not specifically rule on Summerfield's federal Takings claim.

Soon after the rejection of their declaratory judgment claim by the state court, Summerfield voluntarily dismissed its prior state case before a final judgment was entered. This was necessary, Plaintiffs explain, because the entry of final judgment on Summerfield's declaratory judgment claim might have forever barred bar Plaintiffs from litigating their federal claims. (Doc. #8 at 2). Plaintiffs' concern over this potential "res judicata trap" arose from another takings case – *Trafalgar Corp. v. Miami County Brd. Of Commissioners, et al.*, Case No. 3:05cv00084, 2006 WL 689112 (S.D. Ohio, March 14, 2006)(Merz, C.M.J.), *aff'd*, 519 F.3d 285 (6th Cir. 2008). In *Trafalgar* the plaintiff's prior unsuccessful state mandamus action triggered res judicata, thus barring the plaintiffs from

4

litigating their federal Takings claim in federal court. Res judicata applied in *Trafalgar* – requiring dismissal of the federal takings claim – even though the plaintiffs had not litigated their takings claim in the state mandamus action. *Id*. at *7-*8.

## III.    DISCUSSION

### A.    The Takings Clause And The Parties' Contentions

The Takings Clause of the Fifth Amendment to the United State Constitution does not prohibit states from taking property; it prohibits states from taking property without just compensation.[2]  *Williamson County. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985).  "Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner....  A federal court may therefore hear a takings claim only after two criteria are met: (1) the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government..., and (2) the plaintiff must have sought 'compensation through the procedures the State has provided for doing so....'  These two requisites mimic the Fifth Amendment's text."  *Hensley v. City of Columbus*, 557 F.3d 693, 695-96 (6th Cir. 2009) (citations to *Williamson* omitted).

The City contends that dismissal of Plaintiffs' Complaint is warranted because their Fifth Amendment takings claim is not yet ripe for review.  Plaintiffs' takings claim is not ripe, according to the City, because Plaintiffs must first obtain a final decision in the Ohio courts on a state mandamus action before proceeding to federal court, and they have not done so.  The City maintains, "no state court action has been concluded to 'take' any property, nor is there any current state action alleging any denial of just compensation.  Plaintiffs allege the same causes of action as the plaintiff in *Coles*, and the court must deny jurisdiction for the same reasons."  (Doc. #6 at 8)(relying on *Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006)).

---

[2] The Fifth Amendment's Takings Clause applies to the states through the Fourteenth Amendment. *Williamson*, 473 U.S. at 176 n.1.

Plaintiffs contend that they have already raised and exhausted their takings claim through Ohio's available procedures by way of Summerfield's prior state case. Having lost on their declaratory judgment claim in that prior case, which effectively denied the relief they sought through mandamus – namely, an Order zoning Inlot 9304 as residential rather than agricultural – Plaintiffs contend that their takings claim is ripe for federal review in the instant case.

Plaintiffs contend that the City is improperly attempting to extinguish their federal claims by forcing them to return to state court and obtain a final judgment on their state mandamus action.  They raise three main arguments:

1. Plaintiffs are not required to prosecute their claims to final judgment in order to be ripe for federal adjudication;

2. Defendant seeks to force Plaintiffs into the *Trafalgar* trap[3], referring to the potential res judicata bar Summerfield's prior state case may have caused; and

3. The Plaintiffs are not required to pursue the mandamus claim to final order in state court once the same court decided the declaratory judgment claim in a manner that rendered further prosecution futile.

(Doc. #8 at 12-18).

**B.    Analysis**

"'[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the *Just Compensation Clause* until it has used the procedure and has been denied just compensation.'  In other words, a wronged party satisfies its duty to seek just compensation by pursuing 'reasonable, certain, and adequate procedures' for obtaining compensation."  *Coles v. Granville*, 448 F.3d 853, 861 (6th Cir. 2006)(quoting in part *Williamson*, 473 U.S. at 195).  "[P]rior to exercising jurisdiction

---

[3] *Trafalgar Corporation v. Miami County Bd. of County Commrs.*, 2006 WL 689112 (S.D. Ohio, Mar. 14, 2006), *affd.*, 519 F.3d 285 (6th Cir. 2008).

over a takings case, a federal court must first inquire into whether or not the relevant state compensation procedures are 'reasonable, certain, and adequate.'" *River City Capital v. Bd. of County Comm'rs, Clermont County, Ohio*, 491 F.3d 301, 306-07 (6th Cir. 2007) (citations omitted).

In Ohio, the relevant state compensation procedure a takings plaintiff must pursue is a mandamus action. *River City*, 491 F.3d at 301; *see Coles*, 448 F.3d at 863 ("Ohio courts have accepted a mandamus action as the appropriate approach for a plaintiff alleging a taking without just compensation."). "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 237 (2007)(quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 64 (2002)).

Ohio's mandamus action constitute "'reasonable, certain, and adequate' procedures for plaintiffs to pursue for an involuntary taking." *Coles*, 448 F.3d at 865. "[T]hus ... the primary inquiry, at least for asserting ripeness, is whether or not an Ohio takings plaintiff has fully exhausted his state mandamus remedies before coming to federal court. If he has, then the case is ripe for [federal judicial] review. If he has not, then it is not." *River City*, 491 F.3d at 307.

Summerfield's prior state case included a mandamus claim, a takings claim, and a claim seeking declaratory judgment. (Doc. #8, Exhs. 1, 3). Summerfield's Second Amended Complaint contained a prayer for relief seeking, in part, a "peremptory writ of mandamus compelling the Defendant to initiate appropriation proceedings related to its taking of the Plaintiff's real property." *Id*. at p. 6. Summerfield's Second Amended Complaint in state court thus began to exhaust the Ohio procedures – a mandamus action seeking to initiate an appropriation proceeding – available to Plaintiffs for raising their takings claim. The United States Court of Appeals for the Sixth Circuit explained this procedure as follows:

7

> Ohio has a statutory provision that requires public officials to bring an appropriation action prior to taking private property. *Ohio Rev. Code* §§ 163.01-163.62. This statute creates obligations for public officials and not a direct cause of action for citizens. However, mandamus allows property owners to usurp *section* 163 for their own benefit, and this ability to compel an official into an appropriation action is buttressed by Ohio's incorporation of the mandamus action into its statutory structure. *Ohio Revised Code* §2737.01 defines 'mandamus' as 'a writ, issued in the name of the state to an inferior tribunal, a corporation, a board, or person, commanding the performance of an action which the law specifically enjoins as a duty to resulting from an office, trust, or station.'... Because Ohio government officials are required by statute to bring appropriation proceedings whenever a taking occurs, this is such a 'duty' which can be compelled by mandamus....

*Coles*, 448 F.33d at 864.

The problem Plaintiffs cannot overcome in the instant case is that Summerfield merely initiated the mandamus/takings claim in its prior state case without fully exhausting it. This is so because Summerfield voluntarily dismissed its prior state case before the Court of Common Pleas ruled on its mandamus action, including its prayer for mandamus relief seeking to compel an appropriations proceeding. The only thing resolved in Summerfield's prior state case was its claim for declaratory judgment. The Court of Common Pleas found that claim meritless, concluding that Inlot 9304 was zoned for agricultural use pursuant to its pre-annexation classification. (Doc. #8, Exh. 6). The state court did not specifically address Summerfield's mandamus claim or its takings claim or its request for a peremptory writ of mandamus compelling the City to initiate appropriation proceedings. *See id*. Because the state court had not ruled on the merits of Summerfield's mandamus action before its voluntary dismissal, Summerfield's prior case merely began – but did not fully exhaust – Plaintiffs' state mandamus remedies.

Plaintiffs argue that they have gone above and beyond what is reasonable, certain, and adequate because they pursued both a declaratory judgment action and a mandamus action in state court. This does not help Plaintiffs show full exhaustion of Ohio's

mandamus action. The fact that Summerfield's prior state Complaints raised both types of claims says nothing about the extent Summerfield litigated and exhausted those claims using Ohio's procedure for obtaining a writ of mandamus to compel an appropriation proceeding. Summerfield did not fully exhaust that procedure because it voluntarily dismissed the case before obtaining a ruling on whether an writ of mandamus must issue to compel an appropriation proceeding.

Plaintiffs further argue, "[I]t was also reasonable and certain from the Miami County Court's Judgment in favor of Defendant that Plaintiffs would be unsuccessful on their mandamus cause of action." (Doc. #8 at 13). They reason that the state court's conclusion that Inlot 9304 was zoned for agricultural use likely meant that the state court was not going to issue a peremptory writ of mandamus requiring the city to zone Inlot 9304 for residential use. Plaintiffs' reasoning goes awry, however, because they overlook Summerfield's request in their state Complaints for a "peremptory writ of mandamus compelling the Defendant to initiate appropriate proceedings related to its taking of the Plaintiff's real property." (Doc. #8, Exh. 3 at p. 6). This requested relief was still potentially available to Summerfield when it voluntarily dismissed its prior case. As stated above, to fully exhaust their takings claim, Plaintiffs were required to pursue their mandamus action in the Ohio courts through the still available appropriate proceedings Summerfield requested in its Amended Complaint. *See Coles*, 448 F.3d at 860-65.

Plaintiffs contention that further prosecution of their mandamus claim would have been futile due to the state court's rejection of their declaratory judgment claim. This contention lacks merit. Although the state court rejected Summerfield's declaratory judgment claim based on the conclusion that Inlot 9304 was zoned for agricultural – not residential – use, this conclusion did not mean that Summerfield was precluded from litigating its taking claim by seeking a mandamus compelling an appropriation proceeding. The Sixth Circuit's discussion of this procedure in *Coles* illuminates the availability and frequent use by takings plaintiffs of mandamus to compel appropriation

9

proceedings in the Ohio courts. The *Coles* decision explained, "The Ohio Supreme Court has since [2001] addressed a physical and at least two regulatory takings cases, and in all these cases the court affirmed the use of the writ of mandamus by plaintiffs seeking compensation for local government takings. *See Duncan v. City of Mentor City Council*, 105 Ohio St.3d 372 ... (Ohio 2005)(regulatory taking); *Preschool Dev. Ltd. v. City of Springboro*, 99 Ohio St.3d 347 ... (2003)(physical taking); *Shemo*, 765 N.E.2d at 345 (regulatory taking)." *Coles*, 448 F.3d at 863-64. The *Coles* decision further explained, "At a minimum, since ... 1998, Ohio intermediate appellate courts have consistently recognized the writ of mandamus as the appropriate vehicle with which to challenge an involuntary taking by a local or state governmental agent." *Coles*, 448 F.3d at 864 (listing cases). It light of this authority, it would not have been futile for Summerfield to further litigate its state case, rather than voluntarily dismiss it. Summerfield could have sought just compensation for the taking of its property – i.e., the zoning of Inlot 9304 for agricultural use – by further seeking in the state case a writ of mandamus to compel an appropriation proceeding.

      Plaintiffs further contend that the voluntary dismissal of Summerfield's prior state case was an attempt to avoid the *Trafalgar* trap or the potential res judicata effect that a final decision in that case might have had on Plaintiffs' ability to obtain federal judicial review of its taking claim. The plaintiff in *Trafalgar* owned a fifty-acre tract of land that was zoned for agricultural use with only a minor exception allowing small areas of residential use. The plaintiff sought to have the property re-zoned for residential use and when it was not, the plaintiff fully litigated – without success – its taking claim in the state courts, including an unsuccessful appeal to the Ohio Supreme Court. *Trafalgar*, 519 F.3d at 286-87. Those state decisions on the merits of the plaintiff's takings claim prevented the plaintiff from raising its taking claim in federal court under the doctrine of issue preclusion. *Id*. 287-88. Like the District Court in *Trafalgar*, 2006 WL 689112, the Court of Appeals held, "Because that issue was directly decided in previous state case, it

cannot be re-litigated in federal district court." 519 F.3d at 287.

Plaintiffs' attempt to avoid the *Trafalgar* trap by voluntarily dismissing Summerfield's prior state case before final judgment was entered was certainly an understandable attempt to secure federal judicial review. However, federal review is frequently unavailable to takings plaintiffs, *see San Remo Hotel v. City and County of San Francisco*, 545 U.S. 323, ___, 125 S.Ct. 2491, 2504-07 (2005) ("At base, petitioners' claim amounts to little more than the concern that it is unfair to give preclusive effect to state-court proceedings that are not chosen, but are instead *required* in order to ripen federal takings claims. Whatever the merits of this concern may be, we are not free to disregard the full faith and credit solely to preserve the availability of a federal forum."), and that preclusion reality does not override the requirement that plaintiffs must fully exhaust their reasonable, certain, and adequate state procedures for obtaining just compensation. *See Coles*, 448 F.3d at 861-65.

Because Plaintiffs have not fully exhausted their state mandamus procedure in the Ohio courts, this Court lacks subject matter jurisdiction over Plaintiffs' takings claim. *See River City*, 491 F.3d at 309; *see also Coles*, 448 F.3d at 865.

Plaintiffs further contend that the City's Motion to Dismiss lacks merit because it focuses solely on their takings claim, leaving other claims – especially its claims for Declaratory Judgment and Mandamus – over which this Court has subject matter jurisdiction. This contention lacks merit because Plaintiffs' mandamus, due process, and equal protection claims are ancillary to their takings claim, *see* Doc. #1 at 2-11, and are therefore subject to the ripeness requirement. *See Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

Accordingly, the City's Motion to Dismiss is well taken.

## IT IS THEREFORE ORDERED THAT:

1. Defendant City of Troy's (the City's) Motion to Dismiss (Doc. #6) is GRANTED;

11

2.      Plaintiffs' Complaint is dismissed under Fed. R. Civ. P. 12(b)(1); and

3.      The case is terminated on the docket of this Court.


August 31, 2009

                                                                s/ Sharon L. Ovington
                                                                 Sharon L. Ovington
                                                           United States Magistrate Judge